UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Laurie L. Czerwiec,

                          Plaintiff,

      v.

Commissioner of Social Security,

                          Defendant.

**Decision and Order**

18-CV-849 HBS
(Consent)

## I. INTRODUCTION

The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c). The Court has reviewed the Certified Administrative Record in this case (Dkt. No. 7, pages hereafter cited in brackets), and familiarity is presumed. This case comes before the Court on cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. Nos. 8, 15.) In short, plaintiff is challenging the final decision of the Commissioner of Social Security (the "Commissioner") that she was not entitled to Disability Insurance Benefits under Title II, or Supplemental Security Income under Title XVI, of the Social Security Act. The Court has deemed the motions submitted on papers under Rule 78(b).

## II. DISCUSSION

"The scope of review of a disability determination . . . involves two levels of inquiry. We must first decide whether HHS applied the correct legal principles in making the determination. We must then decide whether the determination is supported by substantial evidence." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) (internal quotation marks and citations omitted). When a district court reviews a denial of benefits, the Commissioner's findings as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). Substantial evidence is defined as "'more

than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).

The substantial evidence standard applies to both findings on basic evidentiary facts, and to inferences and conclusions drawn from the facts. *Stupakevich v. Chater*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994). When reviewing a Commissioner's decision, the court must determine whether "the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Winkelsas v. Apfel*, No. 99-CV-0098H, 2000 WL 575513, at *2 (W.D.N.Y. Feb. 14, 2000). In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir. 1998). The Court may not reverse the Commissioner merely because substantial evidence would have supported the opposite conclusion. *Id.*

For purposes of Social Security disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

Plaintiff bears the initial burden of showing that the claimed impairments will prevent a return to any previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the Administrative Law Judge ("ALJ") must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from continuing past relevant work; and whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry*, *supra*, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry then the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, the ALJ has an affirmative duty to develop the record. *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing past work, the ALJ is required to review the plaintiff's residual functional capacity ("RFC") and the physical and mental demands of the work done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to past relevant work given the RFC. *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

Plaintiff argues that the ALJ did not properly incorporate two medical source statements into her RFC. Two of plaintiff's physicians, Dr. Jeffery Kashin and Dr. Raul Vasquez, completed Form LDSS-4526, from the New York State Office of Temporary and Disability Assistance, titled, "Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination." [447–48, 797–98.] Each physician diagnosed plaintiff with depression and post-traumatic stress disorder (PTSD). Each physician marked straight down the checkboxes indicating no evidence of limitations in plaintiff's physical functioning. Each physician also marked straight down the checkboxes indicating moderate limitations in plaintiff's mental functioning. The ALJ gave "great weight" to the checkbox opinions as supported by objective medical evidence. Each physician, however, went beyond these opinions to add the comment that plaintiff was "unemployable" due to her depression and PTSD. The ALJ gave little weight to the comments about employability, and this is where plaintiff finds fault:

> The ALJ explained that he gave the treating source opinions "great weight" to the extent that they expressed moderate limitations, but "little weight" as to their conclusion that Plaintiff was unemployable. Tr. 28.
>
> However, both treating doctors opined that Plaintiff would have a moderate limitation with regards to making simple decisions; maintains basic standards of personal hygiene and grooming; and being able to function in a work setting at a consistent pace. *See* Tr. 443, 793. The ALJ's RFC finding contains no limitation with regards to the ability to make decisions, the ability to maintain hygiene and grooming, and the ability to perform at a consistent pace. *See* Tr. 26. Adding further confusion is the fact that, at step three, the ALJ found that Plaintiff's ability to maintain concentration, persistence, and pace was only mildly limited—rather than moderately limited as Plaintiff's treating physician's opined. *See* Tr. 25.
>
> Thus, there is a discrepancy between the opinions the ALJ purported to give "great weight" to, and the ALJ's resulting RFC. No explanation as to why these moderate limitations were not adopted was provided by the ALJ in explaining the weight given to Dr. Kashin and Dr. Vazquez.

(Dkt. No. 8-1 at 14; *see also* Dkt. No. 16 at 2.) The Commissioner responds that the ALJ essentially gave plaintiff favorable consideration for all of the information on the disability forms except the

4

ultimate issue of employability—an issue reserved for adjudication by the Social Security Administration:

> Here, the ALJ stated that he had accorded great weight to the opinions of Dr. Kashin and Dr. Vazquez to the extent that they found moderate limitations in most areas of mental functioning (Tr. 28, 442-43, 792-93). However, the ALJ explained, he accorded little weight to those doctors' conclusory statements that Plaintiff was unemployable due to those issues and any assessment of permanency as even minimal mental health treatment had shown improvement in her symptoms (Tr. 28 (citing Tr. 546-706 [Dr. Vazquez's treatment records], 707-89 [Horizons mental healthcare treatment records]). Indeed, Dr. Vazquez's treatment notes regularly indicated that Plaintiff rated her depression as mild in severity and improved and assessed her depression and anxiety as stable (Tr. 555, 594, 596-97, 602, 604, 608, 620, 628, 631, 636-37, 638, 641, 691-93, 694, 698). And although Plaintiff reported some family issues to her Horizons providers and ultimately terminated treatment there because she felt they were dredging up her past and she wanted to move forward, her notes indicated stability in her symptoms and Dr. Hurley's mental status examinations did not reveal significant abnormalities (Tr. 714, 722, 730, 732, 747-50, 779-85).
>
> In addition, it is well-settled that the issue of whether an individual is "disabled" or "unable to work" is reserved to the Commissioner—and thus the ALJ appropriately discounted those portions of Dr. Kashin's and Dr. Vazquez's Employability Assessment forms. *See* 20 C.F.R. §§ 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability…. A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled"), 404.1527(d)(3) ("We will not give any special significance to the source of an opinion on issues reserved to the Commissioner…."), 416.927(d) (1), (3) (same); *LaValley v. Colvin*, 672 F. App'x 129, 130 (2d Cir. 2017) ("However, whether LaValley qualifies as 'disabled' under the statute is a decision reserved to the Commissioner."). Here, in limiting Plaintiff to simple repetitive tasks and no complex work with only occasional social contact, the ALJ appropriately accorded great weight to the opinions of Dr. Kashin and Dr. Vazquez to the extent that they found moderate limitations in most areas of mental functioning, and little weight to their statements that she was unemployable because of her mental impairments as those were not only inconsistent with those doctors' opinions of only moderate mental limitations and inconsistent with the overall evidence, but were on issues within the sole province of the Commissioner (Tr. 26, 28, 442-43, 792-93).

(Dkt. No. 15-1 at 16–17.)

The Commissioner has the better argument here. The ALJ gave plaintiff very favorable consideration by assigning great weight to checkboxes on a form prepared for a different

governmental agency that might have different definitions. *See Shipp v. Colvin*, No. 16-CV-919 HBS, 2018 WL 4870748, at *3 (W.D.N.Y. Oct. 9, 2018) ("The remainder of the checkmarks in the questionnaire come with no explanation and are too conclusory to oppose a consistent medical record. The Second Circuit has held that such standardized form opinions are only marginally useful for purposes of creating a meaningful and reviewable factual record.") (internal quotation marks and citations omitted). The ALJ then crafted an RFC that reflected what the two completed forms stated—no physical limitations and moderate mental limitations:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant can tolerate no more than occasional contact with co-workers, supervisors and the public, can complete no more than simple, repetitive one and two-step tasks requiring no complex work (defined as work requiring multiple, simultaneous goals or objectives and no more than one change in setting or task per day).

[31.] The RFC does not contain the word "moderate," but the limitations that the ALJ crafted are consistent with generally accepted applications of moderate mental limitations. *Cf. Landers v. Colvin*, No. 14-CV-1090S, 2016 WL 1211283, at *4 (W.D.N.Y. Mar. 29, 2016) ("However, an ALJ need not call out every moderate limitation by name, provided that the RFC appropriately reflects such limitations. Plaintiff fails to demonstrate that these moderate limitations require the finding of a more limited RFC. The determination that Plaintiff is limited to 'simple, repetitive, and routine tasks' accounts for Plaintiff's limitations as to maintaining attention and concentration, performing activities within a schedule, and maintaining regular attendance.") (citations omitted). The limitations further are consistent with the clinical notes that the Commissioner has cited. For example, Dr. Vasquez's office noted on March 6, 2015 that plaintiff's depression was improving with no medication side effects noted. [609.] On July 7, 2015, Dr. Vasquez's office rated plaintiff's depression as "mild in severity." [628.] The same assessment continued as of June 24, 2016. [694.]

In this factual context, the opinion that plaintiff was "unemployable" was factually inconsistent with mild depression as well as legally reserved for the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); 416.927(d)(1) (same); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("Moreover, some kinds of findings—including the ultimate finding of whether a claimant is disabled and cannot work—are reserved to the Commissioner.") (internal quotation marks and citation omitted). Under these circumstances, substantial evidence supported the RFC, and plaintiff's objection is overruled.

Plaintiff argues additionally that the ALJ erred in failing to develop the record, specifically with respect to treatment records that would have been available in 2017:

> Here, we know from Plaintiff's testimony at her hearing, and from records submitted posthearing, that Plaintiff began treating at Lakeshore Behavioral in 2017. *See* Tr. 45, 61-63. The ALJ made no effort to develop the record as to these notes. The ALJ did this despite the fact he held Plaintiff's lack of significant specialized care against her. *See* Tr. 28. Additionally, it is difficult to assess the ALJ's assertion that Plaintiff improved with care, *see id.*, without a complete record of her treatment. In sum, it is well settled that the ALJ's duty to develop, at minimum, required him to develop a complete medical history. The ALJ did not do this. Remand is required.

(Dkt. No. 8-1 at 18.) The Commissioner responds that plaintiff had an opportunity to present the treatment records to the Appeals Council and failed to do so. The Commissioner argues further that the treatment records in any event would not meet the standard for new and material evidence:

> As noted above, at the March 2017 hearing, Plaintiff's then-counsel stated that he would provide records from Lake Shore Behavioral Health as soon as he received them; he notably did not seek the ALJ's assistance in doing so (Tr. 45-46). And as also noted above, Plaintiff did not submit the three pages of records until nearly three months later (Tr. 61-63). In seeking review of the ALJ's unfavorable decision, Plaintiff did not contend that her treatment records from Lake Shore Behavioral Health would alter the ALJ's decision (nor even mention them), nor did she submit any other records from that provider to the Appeals Council to support her request for review (Tr. 362-64). *See* 20 C.F.R. §§ 404.1512, 416.912; 20 C.F.R. §§ 404.1740(b)(1), 416.1540(b)(1). Notably, in denying Plaintiff's request for review of the ALJ's decision on June 12, 2018, the Appeals Council specifically explained

7

that, under its rules, it would review her case if, among other reasons:

> We receive additional evidence that you show is new, material, and relates to the period on or before the date of the hearing decision. You must show there is a reasonable probability that the additional evidence would change the outcome of the decision. You must show good cause for why you missed informing us about or submitting it earlier.

(Tr. 2). Again, no such evidence was submitted to the Appeals Council.

(Dkt. No. 15-1 at 27.)

The Commissioner has the better argument here as well. The Commissioner, through the Appeals Council or otherwise, has the ability to review or to reopen a claim based on new and material evidence. *See* 42 U.S.C. § 405(g); 20 C.F.R §§ 404.970(a)(5), 416.1470(a)(5), 404.988(b), 416.1488(b), 404.989(a)(1), 416.1489(a)(1). "The Social Security Act provides that a court may order the Secretary to consider additional evidence, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding. Thus, an appellant must show that the proffered evidence is (1) new and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative. The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently. Finally, claimant must show (3) good cause for her failure to present the evidence earlier." *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988) (internal quotation marks and citations omitted). Additionally, "we have determined that when, as in this case, a diagnosis emerges after the close of administrative proceedings that sheds considerable new light on the seriousness of a claimant's condition, evidence of that diagnosis is material and justifies remand." *Lisa v. Sec'y of Dep't of Health & Human Servs.*, 940 F.2d 40, 44 (2d Cir. 1991) (citations omitted). The standard for new and material evidence is not

8

met here. Even if the ALJ erred in not pursuing the Lakeshore Behavioral Health records more aggressively, plaintiff had an opportunity to present the problem to the Appeals Council. Plaintiff did not do so, and the Appeals Council cannot be faulted for failing to consider something that plaintiff did not ask it to consider. The issue thus is an issue presented for the first time before this Court. Plaintiff has not offered an adequate explanation for why this Court should be the first entity to address the issue. *Cf. Felder v. Astrue*, No. 10-CV-5747 DLI, 2012 WL 3993594, at *18 (E.D.N.Y. Sept. 11, 2012) ("Because Plaintiff only raises the issue of obesity for the first time on appeal and the medical record is devoid of evidence suggesting Plaintiff's obesity imposed any limitations on his ability to work, the Court finds the ALJ did not err when she did not consider Plaintiff's obesity when determining Plaintiff's ability to perform other work."). Worsening the problem for plaintiff is the absence of the records in question from the record brought before the Court. Of the records that plaintiff wants the Court to consider, the Court appears to have only three pages out of 14 pages that addressed treatment between March and May 2017. [66–68.] The Court cannot apply the new and material evidence standard to three pages, two of which appear to summarize an initial treatment plan and the last of which is just an electronic signature page. *Cf. Suttles v. Berryhill*, No. 8:17-CV-0476 (GTS), 2018 WL 2926273, at *10 (N.D.N.Y. June 11, 2018) ("Plaintiff bears the ultimate burden to prove disability and her failure to raise intellectual disability as a basis for her alleged disability until this appeal is questionable. However, even considering the evidence from Dr. Liotta, the Court finds nothing in the record that would undermine the ALJ's findings, given that the record is otherwise devoid of evidence supporting Plaintiff's contention that she has an intellectual impairment that impacts her ability to work."), *aff'd*, 756 F. App'x 77 (2d Cir. Feb. 28, 2019) (summary order). Under these circumstances, remand will not be necessary to acquire additional records.

9

## III. CONCLUSION

The Commissioner's final determination was supported by substantial evidence. For the above reasons and for the reasons stated in the Commissioner's briefing, the Court grants the Commissioner's motion (Dkt. No. 15) and denies plaintiff's cross-motion (Dkt. No. 8).

The Clerk of the Court is directed to close the case.

SO ORDERED.

            __/s Hugh B. Scott_____
            Hon. Hugh B. Scott
            United States Magistrate Judge

DATED: October 22, 2019